FILED

2023 Aug-16  PM 01:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

Allstate Insurance Company,

      Plaintiff,

    v.

Josh Kelley,

      Defendant.

Case No.

**VERIFIED COMPLAINT FOR INJUNCTION AND OTHER RELIEF**

Plaintiff Allstate Insurance Company ("Allstate"), by and through its undersigned attorneys, alleges as follows for its Complaint against Defendant Josh Kelley ("Kelley"):

## NATURE OF THE ACTION

1.    This action is the result of Kelley failing to comply with certain promises he made and obligations he owes Allstate. Specifically, Kelley failed to comply with the duties and obligations he owes Allstate by soliciting Allstate customers and selling products that compete with Allstate from within one mile of his former Allstate Agency location.

2.    On July 1, 2019, Kelley executed with Allstate both a "Confidentiality and Non-Competition Agreement" (the "LSP Agreement"), in his individual capacity, and an Allstate Exclusive Agency Agreement (the "EA Agreement"), in both his individual capacity and as the owner and "Key Person" of the Citadel

1

51449497 v1

Insurance Group ("Citadel"). True and correct copies of the LSP Agreement and EA Agreement (collectively, the "Agreement") are attached as **Exhibit A**.

3.      The Agreement allowed Kelley to sell, and receive monies from the sale of, Allstate products and services (jointly, "products"). The Agreement, or more specifically the promises Kelley made in the Agreement, allowed Kelley to receive and use Allstate confidential information to sell Allstate products and receive monies from the sale of Allstate products.

4.      Under the Agreement, Kelley agreed, for one year following the termination of his relationship with Allstate, to not solicit Allstate customers to whom he sold Allstate products and who were Allstate customers at the time the of the termination.

5.      Kelley also agreed to not solicit, for one year after the Agreement terminated, Allstate customers that a) he learned about as the result of his relationship with Allstate or from Allstate confidential information he received while working for Allstate and b) were Allstate customers at the time the Agreement terminated.

6.      Lastly, Kelley agreed, for one year after his Agreement terminated, to not sell products that compete with Allstate products from any office or business site located within one mile of his Allstate Agency location, 112 S. Main Street in Tuscumbia, Alabama.

51449497 v1

7.      The Agreement further required Kelley to acknowledge that he would be granted access to Allstate confidential information, that Allstate confidential information is the property of Allstate, and that he would not disclose Allstate confidential information to any third party or permit any third party to access Allstate confidential information.

8.      Kelley agreed to return all Allstate property, including Allstate confidential information, upon termination of the Agreement and his relationship with Allstate.

9.      Effective July 31, 2023, the Agreement and Kelley's relationship with Allstate terminated. Although his relationship terminated, Kelley still owes Allstate certain obligations and duties under the Agreement. Unfortunately, Kelley chose to ignore (and continues to ignore) those obligations and duties.

10.     For example, Kelley began soliciting Allstate customers to leave Allstate for his new and competing insurance agency after the Agreement terminated. His new insurance agency is also called the Citadel Insurance Group ("New Citadel").

11.     New Citadel is an Allstate competitor, and Kelley is operating New Citadel from the same location as he operated Citadel, 112 S. Main Street in Tuscumbia, Alabama.

3

12.     Kelley also solicited (and continues to solicit) Allstate customers via telephone calls, electronic mail, social media posts, and personal visits.

13.     Based upon information and belief, Kelley stole and is using Allstate confidential information (*i.e.*, an Allstate customer list) to solicit Allstate customers and compete with Allstate.

14.     Kelley's actions are a clear violation of the Agreement, as well as a violation of federal and Alabama law. Consequently, Allstate now brings suit against Kelley for breach of the Agreement and misappropriation of trade secrets.

15.     In doing so, Allstate requests that this Court enter an order enjoining Kelley from continuing his knowing and intentional breach of the Agreement and award Allstate compensatory and punitive damages for Kelley's intentional and illegal acts. Allstate also requests that the Court award Allstate its attorneys' fees pursuant to the terms of the Agreement and the law.

16.     More specifically, Allstate requests that this Court enter an order: (1) enjoining Kelley, and anyone acting in concert with him, from soliciting Allstate customers; (2) enjoining Kelley, and anyone acting in concert with him, from selling products that compete with Allstate products from within one mile of the Citadel location; (3) enjoining Kelley, and anyone acting in concert with him, from using, possessing or accessing Allstate confidential information; (4) compelling Kelley to return to Allstate all Allstate property, including all Allstate confidential

4

information, in his custody, possession or control; (5) awarding Allstate compensatory and punitive damages for Kelley's intentional and illegal acts; and (6) awarding Allstate its reasonable attorneys' fees as provided for under the Agreement and applicable law.

## THE PARTIES AND RELEVANT PERSONS

17.     Allstate Insurance Company is an Illinois corporation with its principal place of business located in Northbrook, Illinois.

18.     Josh Kelley is a citizen of the State of Alabama and, based upon information and belief, resides at 3201 Woodward Avenue, Muscle Shoals, Alabama, 35661.

19.     Citadel Insurance Group, LLC (*i.e.*, New Citadel) is an Alabama company with its principal place of business in Tuscumbia, Alabama. New Citadel is an Allstate competitor.

## JURISDICTION AND VENUE

20.     Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over the claims Allstate brings against Kelley under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1833 *et seq.*, because they raise a federal question. Moreover, pursuant to 28 U.S.C. § 1367, Allstate's remaining claims fall within the Court's supplemental jurisdiction because the claims are related to the federal question such that they form part of the same case or controversy.

51449497 v1

21.     Alternatively, the Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because this action is between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

22.     This Court has personal jurisdiction over Kelley because he is a citizen and resident of Alabama.

23.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Northern District of Alabama because Kelley resides in this District, a substantial part of the events giving rise to Allstate's claims occurred in this District, and the Allstate property that Allstate is asking this Court to return is in this District.

## BACKGROUND

### Allstate's Business and Hiring of Independent Agents

24.     Allstate is one of the nation's leading providers of insurance products to individuals and businesses. Among other things, Allstate provides automobile, property, and casualty insurance to individuals and businesses.

25.     In addition to providing these products directly, Allstate appoints independent exclusive agents and agencies (collectively, "Exclusive Agents and Agencies"), through its Exclusive Agency Program, to sell Allstate products.

26.     Allstate rigorously screens its Exclusive Agents and Agencies to ensure that the agents are qualified to represent and sell Allstate products, have the proper

51449497 v1

tools and facilities to analyze and meet customer needs, and can furnish customers with appropriate insurance solutions.

27.    Both Exclusive Agents and Exclusive Agencies execute Exclusive Agency Agreements with Allstate. To do so, each Exclusive Agency designates a "Key Person" to execute the agreement on the agency's behalf.  The Key Person is personally bound by the Exclusive Agency Agreement.

28.    Allstate Exclusive Agents and Agencies hire employees to assist them with the selling of Allstate products. These employees, known as Licensed Service Providers ("LSPs"), are only permitted to access Allstate confidential information and sell Allstate products after they sign an agreement with Allstate and the Exclusive Agency stating that the LSP will, among other things, a) keep Allstate confidential information confidential and b) agree to certain post-employment restrictive covenants. Neither the Exclusive Agencies nor the LSPs have access to Allstate confidential information or Allstate customers until they sign their respective agreements with Allstate.

29.    Allstate expends substantial resources advertising, marketing, and promoting its products. The Exclusive Agents and LSPs benefit, directly and indirectly, from Allstate's advertising, marketing, and promotional efforts, as well as from Allstate's goodwill, reputation, and name recognition. These efforts and

expenditures allow the Exclusive Agents and LSPs to develop and cultivate customer accounts and relationships on behalf of Allstate.

30.     Allstate relies heavily upon repeat business and renewal of policies to maintain its competitive advantage in the highly competitive insurance industry. Maintaining goodwill and a solid business reputation with its customers is a critical component of Allstate's success.

## Protection of Allstate Confidential Information

31.     Allstate and its customers entrust the Exclusive Agents and LSPs to safeguard and protect Allstate confidential information, which includes information relating to, among other things, a customer's personal data, date of birth, social security numbers, types of policies, amount of insurance, premium amounts, description and location of assets and property, claims histories, insurance needs, pricing information, and other insurance coverage information, from unauthorized use or disclosure.

32.     Allstate protects its information by, among other things, limiting the disclosure and use of this information to only the Exclusive Agent and LSP who needs this information to sell Allstate products; educating the Exclusive Agent and LSP about the requirement and necessity of keeping this information confidential; restricting access to this information by restricting access to computer networks and requiring the use of passwords to access the information; and requiring the Exclusive

8

Agent and LSP to execute written agreements that protect against the misuse and improper disclosure of Allstate confidential information.

33.     Pursuant to their agreements with Allstate and while performing services under their agreements, all Exclusive Agents and LSPs acknowledge that they will have access to Allstate confidential information, promise to not disclose Allstate confidential information to anyone not authorized to receive it, and confirm that they will not use Allstate confidential information for their own benefit or for any improper purpose.

34.     Exclusive Agents and LSPs agree, upon termination of their relationship with Allstate, to continue treating Allstate confidential information as confidential, not disclose (either directly or indirectly) Allstate confidential information to any third party, and immediately return all Allstate confidential information to Allstate.

35.     Allstate's confidential information is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to protect its customers' privacy and maintain a competitive advantage in the highly competitive insurance business. Moreover, it goes without saying that Exclusive Agents and LSPs do not have access to Allstate confidential information before becoming affiliated with Allstate and only have access to Allstate

51449497 v1

confidential information because of their affiliation with Allstate and their promises to keep Allstate confidential information confidential.

**Kelley's Agreement to Solicit and Sell Allstate Products**

36.     Upon information and belief, Kelley formed Citadel in February of 2019 for the purpose of owning and operating an Allstate Exclusive Agency.

37.     Before Kelley could sell Allstate products through Citadel, however he had to sign, and did in fact sign, the Agreement.

38.     More specifically, on July 1, 2019, Kelley executed the EA Agreement, both in his individual capacity and as the "Key Person" for Citadel. Kelley is personally bound by the EA Agreement. **Ex. A**, EA Agreement, Section II and XXI(B).

39.     Also on July 1, 2019, Kelley signed the LSP Agreement in his individual capacity.

40.     As a result, Kelley is personally bound by both the EA Agreement and the LSP Agreement, the two agreements that constitute the Agreement governing this action.

41.     Under the Agreement, Kelley acknowledged that the following information is Allstate "confidential information" and property:

> business plans of [Allstate]; information regarding the names, addresses, and ages of policyholders or prospective policyholders of [Allstate]; types of policies; amounts of insurance; premium amounts; the description and location of

10

> insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by [Allstate] as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of [Allstate] that is not otherwise lawfully available to the public.

**Ex A.**, EA Agreement, Section IV(D); LSP Agreement, § 3.

42.     Pursuant to the Agreement, Kelley agreed that he would not, at any time or in any manner, directly or indirectly, use Allstate confidential information for any purpose other than to carry out the provisions of the Agreement. **Ex A.**, EA Agreement, Section IV(D); LSP Agreement, § 4.

43.     Kelley also acknowledged that all confidential information he was provided, and had access to, would, at all times, remain Allstate property and was to be returned to Allstate upon termination of his Agreement and relationship with Allstate. **Ex A.**, EA Agreement, Section IV(D) and XVIII(B); LSP Agreement, § 5.

44.     Pursuant to Section XVIII(D)(1-3) of the EA Agreement and Section 7 of the LSP Agreement, Kelley agreed that, for a period of one year following termination of the Agreement, he would not solicit the purchase of products competitive with those sold by Allstate:

- With respect to any person, company, or organization to whom [Citadel], or any person employed by [Citadel], including [Kelley], sold insurance or other products or services on behalf of [Allstate], and who is a customer of [Allstate] at the time of the termination; or

51449497 v1

- With respect to any person, company, or organization who is a customer of [Allstate] at the time of the termination and whose identity was discovered as a result of access to confidential information of [Allstate]; or

- From any office or business site located within one mile of any location from which [Citadel] sold insurance or other products or services during the year immediately preceding the termination.

**Ex A**., EA Agreement, Section XVIII(D)(1-3); LSP Agreement, § 7(1-3). He acknowledged that such limitations were not an "undue restraint" on him or on Citadel. **Ex. A**, EA Agreement, Section XVIII(G).

45.    Kelley recognized that a breach of any of the provisions in his Agreement would "cause irreparable damage to [Allstate's] business and that such damage will be difficult or impossible to measure." **Ex A**., EA Agreement, Section IV(F) and XVIII(F); LSP Agreement, § 10.

46.    Accordingly, Kelley agreed that, if he breached any of the duties and obligations he owed to Allstate under the Agreement, then Allstate would be "entitled to an order granting injunctive relief from any court of competent jurisdiction," in addition to other rights and remedies "without the necessity of posting a bond." *Id*.

47.    Kelley also agreed that Allstate would be "entitled to an award of reasonable attorneys' fees in the event that it is successful in an application for

12

injunctive relief or in an action based upon breach" of any of the terms set forth in the Agreement. *Id*.

## Kelley Breaches His Agreement With Allstate

48.     Kelley voluntarily terminated his Agreement and relationship with Allstate on July 31, 2023.

49.     Consequently, on July 31, 2023, Kelley promised to, among other things: (a) immediately return all Allstate confidential information and property to Allstate; (b) not solicit Allstate customers until after July 31, 2024; and (c) not sell products that compete with Allstate from within one mile of the Citadel location (*i.e.*, his former Allstate Exclusive Agency location) until after July 31, 2024.

50.     Instead of complying with these duties and obligations, Kelley decided to open a competing insurance agency and sell products that compete with Allstate from within one mile of the Citadel location. In fact, Kelley decided to sell products that compete with Allstate from the **exact same** location as the Citadel location and keep the exact same agency name.

51.     He also began contacting and soliciting Allstate customers to leave Allstate and, instead, purchase products from him and New Citadel.

52.     More specifically, Kelley called (and is calling) Allstate customers to tell them that he is with a new insurance agency, and he then solicited the customers to leave Allstate and, instead, purchase products from him and New Citadel.

13

53.     Moreover, on July 26, 2023, prior to the termination of his Allstate relationship, Kelley posted a video on social media, specifically Facebook, announcing that he was terminating his relationship with Allstate and opening a competing insurance agency (New Citadel) from his former Allstate Exclusive Agency location. In the video, Kelley expressly invited Allstate customers to reach out to him to explore purchasing competing products from him.

54.     Given the large amount of solicitation activity, it is clear that Kelley kept Allstate confidential information after his relationship with Allstate terminated and is now using Allstate confidential information to solicit Allstate customers.

55.     Because of Kelley's refusal to honor the duties and obligations he owes Allstate, Allstate is suffering customer losses and the misuse of Allstate confidential information.

### Irreparable Harm to Allstate

56.     Kelley is harming Allstate's legitimate business interests, including its goodwill and customer relationships, by soliciting Allstate customers.

57.     Kelley is also in possession of Allstate confidential information, and the only reason for Kelley to possess Allstate confidential information is to use it on behalf of himself and his new insurance agency.

51449497 v1

58.     Allstate confidential information and goodwill are therefore at risk because Kelley is unfairly competing with Allstate by using Allstate confidential information to solicit Allstate customers.

59.     Moreover, Kelley was affiliated with Allstate for many years and sold Allstate products through Citadel for over four years. Allstate customers know Kelley, are familiar with Kelley servicing their needs, and are familiar with Kelley servicing their needs from the Citadel location.

60.     Existing Allstate customers that Kelley serviced or with whom he communicated may pass directly by, or come into, the Citadel location, see Kelley, and mistakenly believe they are dealing with an Allstate agent. Kelley can then solicit those customers to leave Allstate and become customers of his new insurance agency (*i.e.*, an Allstate competitor).

61.     By soliciting Allstate's customers as a competitor and selling products that compete with Allstate out of the Citadel location, Kelley is threatening the relationship between Allstate and its customers.

62.     Consequently, it is both probable and imminent that an existing or prospective customer may purchase insurance products from Kelley instead of from Allstate.

63.     Accordingly, injury to Allstate is therefore both probable and imminent because Kelley clearly intends to continue violating his Agreement and the law.

64.     Put another way, Allstate is suffering irreparable harm that may not be adequately rectified or compensated by money damages.

65.     Injunctive relief is therefore necessary and appropriate to prevent further damage to Allstate.

## COUNT I
### (Breach of Contract)

66.     Allstate repeats and realleges each and every allegation contained in Paragraphs 1 through 65 of the Complaint, as though fully set forth herein.

67.     On July 1, 2019, Kelley entered into the Agreement with Allstate. **Ex. A**.

68.     The Agreement is a valid and enforceable contract.

69.     Under the Agreement, Kelley promised, for a period of one year following the termination of the Agreement, to not sell products competitive with Allstate products from within one mile of the former Citadel location.

70.     Under the Agreement, Kelley promised, for a period of one year following the termination of the Agreement, to not solicit Allstate customers.

71.     Under the Agreement, Kelley promised, upon termination of the Agreement, to immediately return all property belonging to Allstate.

72.     Kelley further promised to not use Allstate confidential information for any purpose other than carrying out the provisions of the Agreement.

51449497 v1

73.   The post-termination covenants found in the Agreement are reasonable in scope and duration and are necessary to protect Allstate's legitimate business interests in its confidential information, goodwill, and longstanding customer relationships.

74.   Allstate has performed all the duties and obligations it owes Kelley under the Agreement.

75.   Kelley breached the Agreement by, among other things, misusing Allstate confidential information to solicit Allstate customers, soliciting Allstate customers, refusing to return Allstate confidential information to Allstate, and selling products that compete with Allstate products from within one mile of the Citadel location.

76.   Kelley continues to breach his Agreement, by, among other things, misusing Allstate confidential information to solicit Allstate customers, soliciting Allstate customers, refusing to return Allstate confidential information to Allstate, and continuing to sell products that compete with Allstate products from within one mile of the Citadel location.

77.   Allstate has incurred significant damages because of Kelley's breach of the Agreement. Kelley's illegal solicitations and actions have caused Allstate to lose customers and potential customers. Kelley's illegal solicitations and actions have

51449497 v1

also damaged Allstate's goodwill, reputation, and legitimate business interests. Allstate's damages are more than $75,000.00.

78.     Moreover, Kelley's breaches of the Agreement are continuing.  Allstate is therefore subject to continuing irreparable harm, economic injury, and damage to its goodwill and business reputation.

79.     Allstate has no adequate remedy at law, and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by Kelley's breach of his Agreement in a manner that is not fully compensable by money damages.

80.     Allstate therefore requests that this Court grant injunctive relief against Kelley that prohibits Kelley from a) using Allstate confidential information, b) soliciting Allstate customers, and c) selling products that compete with Allstate from within one mile of the  Citadel location.

81.     Allstate further requests that this Court order Kelley to immediately return to Allstate all Allstate confidential information and property in the custody, possession, or control of Kelley.

82.     Finally, pursuant to Section IV(F) and XVIII(F) of the EA Agreement and Section 10 of the LSP Agreement, Allstate further requests that this Court order Kelley to pay the attorneys' fees and costs that it has incurred, and will continue to incur, due to Kelley's breaches of the Agreement.

## <u>COUNT II</u>
### (Misappropriation of Trade Secrets – Alabama Trade Secrets Act)

83.     Allstate repeats and re-alleges each and every allegation contained in Paragraphs 1 through 82 of the Complaint, as though fully set forth herein.

84.     During his relationship with Allstate, Kelley was exposed to substantial amounts of Allstate confidential information.

85.     For instance, Kelley had access to Allstate business plans; information regarding the names, addresses, and ages of policyholders or prospective policyholders of Allstate; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings; policyholder information that is subject to privacy law; and claim information.

86.     The information identified in Paragraphs 31, 41 and 85 is not available to the general public and is closely guarded by Allstate.  Allstate keeps such information strictly confidential to protect its customers' privacy and to maintain an advantage in the highly competitive insurance business.

87.     This information is considered a trade secret under the Alabama Uniform Trade Secrets Act, Ala. Code § 8-27-1 *et seq.* ("ATSA"), because it is a compilation intended for use in business that has significant economic value; is not generally known to the public; is not readily ascertainable from publicly available information; and is subject to reasonable efforts to maintain its secrecy.

51449497 v1

88.     The economic value of the Allstate trade secrets/confidential information Kelley had access to under the Agreement is over $500,000.

89.     Under the ATSA, the Court may award "injunctive and other equitable relief as may be appropriate with respect to any actual or threatened misappropriation of a trade secret." Ala. Code § 8-27-4.

90.     Kelley is misappropriating Allstate trade secrets by refusing to return Allstate property, including Allstate confidential information, and using that information to solicit Allstate customers.

91.     Upon information and belief, Kelley's refusal to return Allstate property, including Allstate confidential information, constitutes the "threatened" misuse of Allstate trade secrets and injunctive relief is therefore appropriate.

92.     Accordingly, Allstate requests that this Court enter an order enjoining Kelley from using any Allstate confidential information and from disclosing Allstate confidential information to anyone not authorized to receive the confidential information.

93.     Allstate also requests that this Court enter an order requiring Kelley to return all Allstate confidential information to Allstate, as he is required to do pursuant to the Agreement and the ATSA.

94.     In addition, Kelley's actions have damaged Allstate's goodwill, reputation, and legitimate business interests.

20

95.     And Kelley's misappropriation of Allstate's trade secrets was willful and malicious.

96.     Allstate therefore requests an award of compensatory damages, exemplary damages, and reasonable attorneys' fees due to Kelley's misappropriation of Allstate trade secrets.

### Count III
### (Violation of Federal Defend Trade Secrets Act)

97.     Allstate repeats and realleges Paragraphs 1 through 96 of the Complaint, as though fully set forth herein.

98.     During his relationship with Allstate, Kelley was provided access to substantial amounts of Allstate confidential information, including the information identified in paragraphs 31, 41, and 81.

99.     Allstate confidential information is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential to maintain a competitive advantage over competitors.

100.    Allstate confidential information is considered a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1833 *et seq.* ("DTSA"), because the information is not generally known outside of Allstate's business; the information is not generally known by employees and others involved in Allstate's business; Allstate has taken reasonable measures to guard the secrecy of the information; the information is of great value to Allstate and would be of great value to its

competitors; Allstate invested significant amounts of time and money in developing the information; the information cannot easily be acquired or duplicated by others; and because Allstate continuously uses the information in its business.

101.   Kelley was under a contractual obligation to return Allstate confidential information to Allstate immediately upon termination of his Agreement.

102.   Kelley, however, ignored (and continues to ignore) his contractual obligations by, based upon information and belief, maintaining possession of Allstate confidential information and using that confidential information to unfairly compete with Allstate.

103.   Unless restrained, Kelley will continue to use, divulge, disclose, acquire, and/or otherwise misappropriate Allstate confidential information.

104. Further, actual or threatened misappropriation of confidential information may be enjoined under the DTSA.

105.   It is axiomatic that, if Kelley is actively using Allstate confidential information and ignoring the terms of the Agreement, then Kelley has no intention of complying with the DTSA.

106.   Consequently, Kelley's actions constitute the actual and/or threatened misuse of Allstate confidential information.  Injunctive relief against Kelley is therefore appropriate.

51449497 v1

107.   Allstate requests an order enjoining Kelley from using Allstate confidential information and from disclosing Allstate confidential information to anyone not authorized to receive the confidential information.

108.   Allstate further requests an order requiring Kelley to return all Allstate confidential information to Allstate.

109.   Finally, Kelley's misappropriation of Allstate confidential information has been willful and malicious, and Allstate has incurred significant damages as a result of Kelley's misappropriation.

110.   Kelley's actions have also damaged Allstate's good will, reputation, and legitimate business interests.

111.   Allstate is therefore entitled to recover not only compensatory damages, but also punitive damages and attorneys' fees resulting from Kelley's wrongful misappropriation of Allstate confidential information.

**WHEREFORE**, Plaintiff Allstate Insurance Company respectfully requests that this Court:

1.   Enter an order enjoining and restraining Josh Kelley, and his agents, representatives, associates, employees, and all those acting in concert or participation with him, from:

> (a)   soliciting Allstate customers to whom Kelley sold Allstate products and/or about whom he possessed confidential information, and who were Allstate customers at the time his Agreement terminated;

> (b)   using any Allstate confidential information for his own benefit

23

and from disclosing Allstate confidential information to anyone not authorized to receive the information; and

 (c) selling products that compete with Allstate products from within one mile of the former Citadel location;

2. Enter an order requiring Kelley to return all Allstate confidential information in his possession, custody or control to Allstate;

3. Enter judgment against Kelley for compensatory damages in an amount to be determined at trial;

4. Enter judgment against Kelley for punitive damages in an amount to be determined at trial;

5. Award Allstate the costs and expenses, including reasonable attorneys' fees, Allstate incurs as a result of Kelley's breach of the Agreement;

6. Award Allstate the costs and expenses, including reasonable attorneys' fees, Allstate incurs as a result of Kelley's violation of the Alabama Trade Secrets Act and Defend Trade Secrets Act; and

7. Award Allstate such other relief as the Court may deem just and proper.

Dated: August 16, 2023

Respectfully submitted,

By: */s/ Victor L. Hayslip*
Victor L. Hayslip
Elena L. Bauer
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
(205) 251-3000 (Tel.)
(205) 244-5649 (Fax)
vhayslip@burr.com

24

ebauer@burr.com

ATTORNEYS FOR PLAINTIFF ALLSTATE
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 16, 2023, I served the foregoing document via both electronic mail and regular United States Mail to:

William K. Diver
210 West Tennessee Street
Florence, Alabama 35630
William.Diver@diver-law.com

*/s/ Victor L. Hayslip*
Of Counsel

51449497 v1

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C. § 1746, I, Jessica Cannon, on behalf of Plaintiff Allstate

Insurance Company, verify under penalty of perjury that the foregoing statements in

Allstate Insurance Company's Verified Complaint are true and correct to the best of

my knowledge, information, and belief.

_____
Jessica Cannon

Dated: August 16, 2023

51449497 v1